51 P.3d 461

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Anthony Adolph GUTIERREZ, Defendant–Appellant.**

**State of Idaho, Plaintiff–Respondent,**

v.

**Angel Ann Gutierrez, Defendant–Appellant.**

Nos. 26943, 26944.

Court of Appeals of Idaho.

July 10, 2002.

Ronald J. Jarman, Pocatello, for appellants.

Hon. Alan G. Lance, Attorney General; William M. Loomis, Deputy Attorney General, Boise, for respondent. William M. Loomis argued.

LANSING, Judge.

This is an appeal from an order denying suppression of evidence found in an automobile after a traffic stop. Because we conclude that the police officer unreasonably extended the detention after the reason for the traffic stop was concluded, we reverse.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

During the early evening hours of July 9, 1999, Angel Ann Gutierrez ("Angel") and Anthony Adolph Gutierrez ("Anthony"), sister and brother, were traveling as passengers in an out-of-state automobile that was being driven by Kevin B. Cheek. The vehicle was pulled over by Officer Jon Bunderson of the Soda Springs Police Department for speeding. Bunderson asked Cheek for his driver's license and registration, which Cheek produced. Bunderson thought that Cheek exhibited undue nervousness during this exchange. Bunderson told Cheek to remain in the vehicle with Angel and Anthony while Bunderson ran the necessary license and registration checks in his patrol car. It took Bunderson approximately five minutes to complete these checks, which revealed no problems with the driver's license or automobile registration. Bunderson then went back to Cheek's vehicle to give Cheek a warning for speeding. Before delivering the warning or handing back the license and registration, Bunderson asked Cheek to step out of his vehicle. Once Cheek had exited his vehicle, Bunderson delivered the warning and returned the license and registration to Cheek.

Without turning off the overhead lights on his patrol car, or indicating that Cheek could return to his vehicle, or telling Cheek that he was free to leave, Bunderson asked Cheek three questions: whether Cheek had any alcohol or open alcoholic containers in the vehicle; whether he had any controlled substances in the vehicle; and whether he had any weapons in the vehicle. Bunderson told Cheek that his reason for asking the questions was that he had observed that Anthony, the rear seat passenger, acted very nervous. Cheek responded negatively to each question. The questioning took between sixty to ninety seconds to complete.

While Cheek was answering these questions, Bunderson noticed that Cheek was averting his eyes and making overly dramatic gestures with his arms. Based on those observations, Bunderson believed that Cheek was being deceptive. Bunderson then asked Cheek for permission to search his vehicle. Cheek consented. Immediately thereafter, Bunderson asked Angel and Anthony, who were still sitting inside the vehicle, whether they objected to Cheek's consent to search. Neither Angel nor Anthony objected, and each stepped out in order to allow Bunderson to search. Bunderson's search revealed marijuana and drug paraphernalia in a purse, backpack, and another bag, each of which belonged to Angel or Anthony.

Angel and Anthony were cited by Officer Bunderson for misdemeanor possession of marijuana, Idaho Code § 37–2732(c)(3), and possession of drug paraphernalia, I.C. § 37–2734A(1), and they subsequently moved the magistrate court to suppress the marijuana and drug paraphernalia, contending that Bunderson violated their Fourth Amendment rights when he prolonged the vehicle stop and searched the vehicle after the purpose of the stop had been concluded. The magistrate denied the suppression motion. Angel and Anthony then pleaded guilty to the charged offenses but reserved their right to appeal the suppression ruling. The district court on intermediate appeal affirmed the magistrate's order.

## II.

### ANALYSIS

Motions to suppress evidence for violation of constitutional rights present ques-

tions of fact and law. The facts that are material to the issues raised in this appeal are not in dispute. Therefore, we exercise free review in determining whether constitutional standards have been met in light of the facts presented. *State v. Holler*, 136 Idaho 287, 291, 32 P.3d 679, 683 (Ct.App.2001); *State v. Evans*, 134 Idaho 560, 563, 6 P.3d 416, 419 (Ct.App.2000); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct.App.1992).

 The Fourth Amendment safeguard against unreasonable searches and seizures applies to the seizures of persons through arrests or detentions falling short of arrest. *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607, 614 (1975); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889, 902 (1968). The stop of a vehicle is a seizure of its occupants and is therefore subject to Fourth Amendment standards. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628 (1981); *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1395–96, 59 L.Ed.2d 660, 667–68 (1979); *State v. Haworth*, 106 Idaho 405, 406, 679 P.2d 1123, 1124 (1984). When the purpose of the detention is to investigate a possible traffic offense or other crime, it must be based upon reasonable, articulable suspicion of criminal activity. *Brignoni–Ponce*, 422 U.S. at 884, 95 S.Ct. at 2581, 45 L.Ed.2d at 618; *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983); *State v. Schumacher*, 136 Idaho 509, 37 P.3d 6 (Ct.App.2001). Because the stop of a vehicle and detention of its driver is generally a detention of any passengers as well, passengers have standing to contest the reasonableness of the detention. *Haworth*, 106 Idaho at 406, 679 P.2d at 1124; *State v. Luna*, 126 Idaho 235, 237, 880 P.2d 265, 267 (Ct.App. 1994).

In this case, the lawfulness of the initial traffic stop for speeding is not contested. Rather, Angel and Anthony assert that Officer Bunderson unlawfully prolonged the detention after the traffic control purpose for the stop had been satisfied. They contend that after issuing the warning and returning Cheek's license and registration, Bunderson impermissibly continued the detention by questioning Cheek about alcohol, drugs and weapons—matters unrelated to the purpose of the stop—without reasonable suspicion. The defendants point out that Cheek was not told by Officer Bunderson that he could leave when his documents were handed back but, instead, Bunderson immediately proceeded with questioning about the contents of Cheek's car.

The State responds that once Cheek received his license and registration, he was free to leave and any detention ended. The continuing conversation between Bunderson and Cheek, the State argues, was consensual and therefore did not implicate the Fourth Amendment. The State also argues in the alternative that even if the questioning was not a consensual interaction, it was reasonable as a brief extension of the traffic stop.

## A. The Questioning Was Not Consensual

 Not all contacts between policemen and citizens constitute seizures of the individuals. A seizure occurs only when the officer, through physical force or show of authority, restrains an individual's liberty. *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247, 254 (1984); *Terry*, 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16; *State v. Nickel*, 134 Idaho 610, 612, 7 P.3d 219, 221 (2000). The test to determine whether someone is restrained is whether, considering all of the circumstances surrounding the encounter, the police conduct would communicate to a reasonable person that he or she is not at liberty to ignore the police presence and go about his or her business. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398 (1991); *State v. Zavala*, 134 Idaho 532, 536, 5 P.3d 993, 997 (Ct.App.2000); *State v. Fry*, 122 Idaho 100, 103, 831 P.2d 942, 945 (Ct.App.1991). Thus, a traffic stop may evolve into a consensual encounter if the officer returns the driver's license, registration and insurance documents and engages in any subsequent questioning without further show of authority which would convey a message that the individual is not free to leave. *State v. Martinez*, 136 Idaho 436, 441, 34 P.3d 1119, 1124 (Ct.App.2001).

■ We conclude, based on the totality of the circumstances, that no such evolution from detention to consensual encounter occurred here. First, after learning from dispatch that there were no problems with Cheek's driver's license or registration, and after deciding to issue only a warning for speeding, Bunderson required Cheek to get out of his vehicle before Bunderson handed back the documents or gave the warning. Bunderson never thereafter indicated to Cheek that he could return to his vehicle. Although the practice of requesting a driver to step out of the vehicle during the execution of a traffic stop is lawful, *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 333 n. 6, 54 L.Ed.2d 331, 337 n. 6 (1977); *State v. Parkinson,* 135 Idaho 357, 363, 17 P.3d 301, 307 (Ct.App.2000), it is also likely that a person who has been directed by an officer to exit a vehicle would not believe that the traffic stop was over until he or she was permitted to return. Without telling Cheek that he was free to leave, Bunderson asked Cheek about alcohol, controlled substances, and weapons. We recognize that the United States Supreme Court has declined to adopt a bright-line rule that would require officers to first say that the motorist is free to leave before a post-traffic stop consent to search could be deemed voluntary. *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). However, whether the officer said that the motorist was free to leave remains one of the myriad circumstances that courts should examine in determining whether the consent was freely given. *See id.* at 39–40, 117 S.Ct. at 421–422, 136 L.Ed.2d at 354–355. Here, Cheek was neither told that he was free to leave nor told that he could reenter his automobile before Bunderson began posing questions about alcohol, drugs and weapons. In addition, throughout the questioning, the patrol car's overhead lights remained on. This use of the emergency lights was indicative of a continued detention. *See* I.C. § 49–625 (requiring that drivers stop upon the approach of a police vehicle using emergency lights and remain stopped until the police vehicle has passed or the driver has been otherwise directed by a police officer); I.C. § 49–1404(1) (prohibiting a driver from fleeing or attempting to elude a police vehicle when given a signal to stop by use of the police officer's emergency lights); *State v. Mireles,* 133 Idaho 690, 692, 991 P.2d 878, 880 (Ct.App.1999) (holding act of turning on overhead lights, although not necessarily intended to create a detention, constituted a *de facto* detention commanding the driver to remain stopped); *Berkemer v. McCarty,* 468 U.S. 420, 436–37, 104 S.Ct. 3138, 3148–49, 82 L.Ed.2d 317, 332–33 (1984) (noting that "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic stop without being told they might do so.") Finally, the officer's comments that followed after the speeding warning were not a sociable exchange; the officer engaged in questioning that carried accusatory tenor in its reference to the alleged nervousness of Cheek's passenger, Anthony Gutierrez. The totality of these circumstances would not have led a reasonable motorist to infer that he was free to ignore the officer's questions and drive away.

**B. The Questioning Was Not a Permissible Extension of the Traffic Stop**

Having concluded that Officer Bunderson's questioning of Cheek after the reason for the traffic stop had been fulfilled was not a consensual encounter but a continuation of the detention, we must examine whether the questioning reasonably extended the duration of the traffic stop or illegally extended the detention so as to taint Cheek's consent to the search of his vehicle. We note that the State does not contend, and the facts would not support a finding, that Officer Bunderson possessed reasonable suspicion that would justify a detention to investigate any offense other than the speeding offense that motivated the initial stop.

The United States Supreme Court has stated that an investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer,* 460 U.S. at 500, 103 S.Ct. at 1325, 75 L.Ed.2d at 238. *See also State v. Godwin,* 121 Idaho 491, 501, 826 P.2d 452, 462 (1992); *Martinez,* 136 Idaho at 440–41, 34 P.3d at 1123–24. An individual "may not be detained even momentarily without reasonable, objective grounds for doing so."

*Royer*, 460 U.S. at 498, 103 S.Ct. at 1324, 75 L.Ed.2d at 236.

The situation here is similar to the circumstance presented in *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988), *overruled on other grounds by U.S. v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir.1995), where a state police officer stopped a car because the driver was not wearing a seatbelt, a violation of the state's traffic regulations. After reviewing the driver's operator license and a rental agreement on the car, and finding both in order, the officer began questioning the motorist and his passenger to determine whether they were hauling contraband. The officer eventually gave the driver a written warning for the seatbelt violation and returned the rental agreement and driver's license, but without advising the driver that he was free to go, the officer began asking whether the vehicle occupants were carrying weapons or contraband. The driver replied that they were not hiding anything and that the officer was free to look, whereupon a search was conducted that yielded $5,000 in cash and a package of cocaine. The Tenth Circuit Court of Appeals held that the officer had unlawfully extended the duration of the stop. *Id.* at 1519–20. The court stated, "Although the stop in this case may well have been of short duration, it nevertheless unreasonably extended beyond the length necessary for its only legitimate purpose—the issuance of a warning or citation for a seatbelt violation." *Id.*, n. 8. In accord is *United States v. Valadez*, 267 F.3d 395 (5th Cir.2001), where a driver was stopped on suspicion of an expired vehicle registration sticker and illegal window tinting. The court held that continued detention of the driver after the officer had determined that the registration sticker was valid and the window tinting legal, in order to await results of a computer check on outstanding warrants and the driver's criminal history without any reasonable suspicion to support such an inquiry, violated the driver's Fourth Amendment rights. The court held that

"[f]urther detention was not lawful after the point at which the purposes of the stop was [sic] resolved." *Id.* at 398.

 We reach a like conclusion in the present case. The original purpose for the detention of Cheek and his passengers was to issue a warning or citation for speeding, and that purpose was accomplished when Officer Bunderson issued the warning. The continued detention thereafter to question Cheek about drugs, alcohol and weapons cannot be justified as part of the traffic stop. Although the duration of this questioning was relatively short, lasting sixty to ninety seconds, it was nonetheless an unwarranted intrusion upon the vehicle occupants' privacy and liberty. Heeding the Supreme Court's caution that an individual "may not be detained even momentarily without reasonable, objective grounds for doing so," *Royer*, 460 U.S. at 498, 103 S.Ct. at 1324, 75 L.Ed.2d at 236 we conclude that the detention of Cheek and his passengers beyond the point when the warning was issued was unlawful.[1] Therefore, Cheek and his passengers were being subjected to an illegal detention at the time that Cheek gave his consent to a search of the automobile. A consent to search given during an illegal detention is tainted by the illegality and is therefore ineffective. *Id.* at 507–08, 103 S.Ct. at 1329–30, 75 L.Ed.2d at 242–43; *Zavala*, 134 Idaho at 535–36, 5 P.3d at 996–97.

The State argues that the period of questioning involved here should be deemed a reasonable detention under the authority of *State v. Reed*, 129 Idaho 503, 927 P.2d 893 (Ct.App.1996), pointing to our comment in that opinion that the Fourth Amendment does not necessarily require "that a traffic stop ... be terminated at the instant the officer's suspicion of criminal activity is extinguished." *Id.* at 505, 927 P.2d at 895. The *Reed* decision, however, is inapposite. In that case, an officer stopped a vehicle because it had no license plates, but when the officer approached the vehicle on foot, he saw

---

1. In this respect the present case is distinguishable from *State v. Silva*, 134 Idaho 848, 11 P.3d 44 (Ct.App.2000), where we held that an officer's request to search a car during the course of a traffic stop was permissible. In *Silva*, the officer requested consent to search a vehicle before the purpose of the stop—the issuance of a traffic citation—had been completed, and the request for consent to search could have lengthened the process only a second or two.

a temporary registration sticker in the back window. At that point, the officer no longer had reason to suspect any unlawful act, but he still requested that the driver produce his driver's license and proof of insurance. During the conversation with the driver, the officer noticed an odor of alcohol, and he ultimately arrested the driver for driving under the influence of alcohol. The driver sought suppression of the evidence of his intoxication on the basis that the justification for the stop, investigation of driving without license plates, ended when the officer noticed the temporary registration sticker. We held that the officer was not required to simply turn around and walk away upon his observation of the registration sticker, without giving the driver any explanation for the stop or ascertaining the identity of the driver. Following precedent established by *State v. Godwin*, 121 Idaho 491, 826 P.2d 452 (1992), we held that, after making any lawful stop, an officer is allowed to identify the person stopped in order to protect the officer and others from danger, to accurately prepare any required reports concerning the contact with the motorist, and to allow the officer to adequately respond to allegations of illegal conduct or improper behavior. *Reed*, 129 Idaho at 506, 927 P.2d at 896. Thus, in *Reed*, the routine request for identification and proof of insurance was held to be a legitimate part of the traffic stop itself and necessary to allow the officer to complete functions associated with that stop. In the present case, the detention to question Cheek about the contents of his car and to request consent to search was not part of the traffic stop and was entirely unrelated to its purpose. Our holding in *Reed* does nothing to legitimize such a detention.

## III.

## CONCLUSION

Officer Bunderson's interrogation of Cheek after the reason for the traffic stop was fulfilled was not a consensual encounter nor a legitimate part of the traffic stop. The questioning unreasonably lengthened the detention after the purpose of the stop was accomplished. This prolongation of the detention violated the Fourth Amendment rights of Cheek's passengers, Angel and Anthony Gutierrez, with the result that Cheek's consent to search, given during the unlawful detention, was invalid. Because the consent to search was tainted by the illegality of the detention, evidence found in the search must be suppressed. Accordingly, the order of the district court denying the motion for suppression of evidence is reversed.

Chief Judge PERRY and Judge Pro Tem McKEE concur.