178 P.3d 626

STATE of Idaho, Plaintiff–Appellant,

v.

Erick Von HUFFSTUTLER,
Defendant–Respondent.

No. 31821.

Court of Appeals of Idaho.

April 27, 2006.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for appellant.

Brian D. Thie, Moscow, for respondent.

## AMENDED OPINION

### THE COURT'S PRIOR OPINION DATED FEBRUARY 6, 2006, IS HEREBY WITHDRAWN.

PERRY, Chief Judge.

The state appeals from the district court's order granting Erick Von Huffstutler's motion to suppress. We affirm.

## I.

### FACTS AND PROCEDURE

Huffstutler and a friend were standing in a yard near Huffstutler's vehicle when they were approached by a police officer. The officer was following up on a report from another motorist, which the officer had received approximately one-half hour earlier, that Huffstutler's vehicle had driven over the centerline several times. After Huffstutler agreed to speak with the officer, Huffstutler confirmed that he had been driving and explained that he might have crossed the centerline while talking on his cell phone. The officer obtained Huffstutler's driver's license and requested that dispatch conduct a status check. While waiting for dispatch to obtain the results, the officer spoke with the friend. Another officer arrived at the scene and offered assistance. After dispatch reported no problems with Huffstutler's driver's license, the first officer asked the second officer to return it to Huffstutler. The second officer returned Huffstutler's driver's license to him but did not inform Huffstutler that he was free to leave.

The first officer informed the friend she was free to leave and approached Huffstutler and the second officer. The first officer asked Huffstutler where he was coming from, where he was going, and whether he had previous involvement with drugs. After Huffstutler denied any involvement with drugs, the first officer indicated that he had information to the contrary and asked Huffstutler a second time whether he was involved with drugs. Huffstutler admitted that he had previously used marijuana. The officer asked whether Huffstutler had any contraband on his person or in his vehicle, and Huffstutler indicated that to his knowledge he did not. The officer then looked into Huffstutler's vehicle through a window and asked why Huffstutler had a gas can in the passenger compartment. Huffstutler indicated that he had run out of gas a few days earlier.

The officer again asked Huffstutler whether he had any contraband in his vehicle, and

Huffstutler again indicated that he did not. The officer asked Huffstutler for permission to search the vehicle, and Huffstutler indicated the officer could search the gas can but nothing else. The officer informed Huffstutler that, if he provided consent to a search of his vehicle, the officer would not tear apart the vehicle. Huffstutler agreed to the search and drug paraphernalia was found. Huffstutler was arrested and, during the search incident to his arrest, a baggie containing methamphetamine was discovered. Huffstutler was charged with possession of a controlled substance and possession of drug paraphernalia. I.C. §§ 37–2732(c), 37–2734A.

Huffstutler filed a motion to suppress alleging that his consent to the search was invalid because it was obtained during an illegal detention. At the hearing held on Huffstutler's motion, the state conceded that, once the first officer took Huffstutler's driver's license to run a status check, Huffstutler was detained. The state also acknowledged that, once the check failed to reveal any problems, the officers did not have a basis to continue detaining Huffstutler. The state contended, however, that once Huffstutler's driver's license was returned to him, there was no further restraint on his freedom and the subsequent encounter was consensual. The district court found that Huffstutler was not told he could leave, the friend was informed she could leave, the presence of two armed officers, and the accusatory nature of the first officer's questions constituted a continuing show of authority. Accordingly, the district court concluded Huffstutler's detention did not terminate upon the return of his driver's license, invalidating Huffstutler's consent. The district court then granted Huffstutler's motion to suppress. The state appeals.

## II.

### ANALYSIS

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

■ A consent to search given during an illegal detention is tainted by the illegality and is therefore invalid. *State v. Gutierrez,* 137 Idaho 647, 652, 51 P.3d 461, 466 (Ct.App. 2002). Thus, Huffstutler's consent to search was invalid unless the encounter following the return of his driver's license was consensual. The test to determine whether someone is restrained is whether, considering all of the circumstances surrounding the encounter, the police conduct would communicate to a reasonable person that he or she is not at liberty to ignore the police presence and go about his or her business. *Id.,* 137 Idaho at 650, 51 P.3d at 464.

■ A detention may evolve into a consensual encounter where the officer returns the driver's license and other documents and engages in any subsequent questioning without further show of authority, which would convey a message that the individual is not free to leave. *State v. Roark,* 140 Idaho 868, 870, 103 P.3d 481, 483 (Ct.App.2004); *Gutierrez,* 137 Idaho at 650, 51 P.3d at 464. Where consent to search is obtained after an officer informs a person that he or she is free to leave, the consent occurs during a consensual encounter and is not the product of an illegal detention. *See Roark,* 140 Idaho at 871–72, 103 P.3d at 483–84. However, an officer's failure to inform a motorist that he or she is free to leave, standing alone, does not prevent consent from being freely given. *See Gutierrez,* 137 Idaho at 651, 51 P.3d at 465. Instead, whether the motorist is told he or she is free to leave is one of the myriad circumstances that courts should examine in determining whether the consent is voluntary. *Id.*

The state asserts that Huffstutler could not have overheard the first officer inform the friend she was free to leave and, thus,

that information was irrelevant to whether Huffstutler reasonably believed he could ignore the officers and go about his business and cannot be used to uphold the district court's decision. To support its assertion, the state relies on the first officer's testimony that, because he was speaking with Huffstutler's friend, he did not hear what was said between Huffstutler and the second officer. However, that the first officer did not hear what the second officer said to Huffstutler does not foreclose the possibility that Huffstutler heard the first officer tell the friend she could leave. The record establishes that, while the first officer and the friend were conversing, they were separated from Huffstutler by no more than 14 feet. There was no evidence of any barrier that would have prevented Huffstutler from hearing the first officer. The power to draw factual inferences was vested in the district court, and the record supports the conclusion that Huffstutler could have heard the first officer inform the friend she could leave. In addition, neither officer testified that Huffstutler was informed the initial investigation was concluded. Although Huffstutler's driver's license was returned to him, there was no indication that he would not be cited for crossing the centerline or another traffic violation as a result of his admitted earlier conduct. Accordingly, a reasonable person in Huffstutler's position could assume that he was not free to leave until so instructed by the officer.

The state also challenges the district court's finding that the questions posed to Huffstutler were accusatory in nature and, thus, that there was a show of authority. However, the record demonstrates that, after Huffstutler denied involvement with drugs, the first officer confronted Huffstutler with contrary information and again asked whether he was involved with drugs.[1] The officer inquired whether Huffstutler had any contraband on his person or in his vehicle and, once Huffstutler responded in the negative, the officer approached the vehicle to look inside. After asking about the gas can, the officer inquired for the second time whether there was contraband in the vehicle. By refusing

to accept Huffstutler's responses and indicating that he had contrary information, the first officer communicated his belief that Huffstutler was being dishonest. Thus, contrary to the state's assertion, the record supports the district court's finding that the officer's questions were accusatory in nature.

The state also contends that the totality of the circumstances in this case would have communicated to a reasonable person that he or she was free to leave and, thus, the district court erred in determining that Huffstutler's detention did not evolve into a consensual encounter once Huffstutler's driver's license was returned. In *State v. Martinez*, 136 Idaho 436, 34 P.3d 1119 (Ct.App.2001), police assisted the occupants of a disabled vehicle in transporting the vehicle to a nearby gas station. After the vehicle's occupants and the police had been at the gas station for approximately eighteen minutes, an officer arrived with a drug dog. The drug dog alerted to the vehicle and drugs were found. The defendant alleged that, when the drug dog arrived, he was being illegally detained. This Court noted that the defendant's registration papers had been returned to him and that he and the other occupants had been free to move about the gas station, including using the restroom and walking a dog. *Id.*, 136 Idaho at 441, 34 P.3d at 1124. Additionally, the officers did not seize the defendant by engaging him in conversation and asking about the purpose of his trip. *Id.* This Court concluded that, to the degree the defendant's freedom was restrained, such restraint was the result of the inoperable vehicle and did not result from the officers' actions. *Id.* Thus, the totality of the circumstances did not communicate to the defendant that he was not at liberty to go about his business. *Id.*

In *Gutierrez*, an officer stopped a vehicle for speeding. The officer requested that the driver step outside of the vehicle, returned his documents, and gave him a warning. Then, without informing the driver he was free to leave, the officer asked the driver about alcohol, drugs, and weapons. After

---

1. Although the state emphasizes that the district court used the word "conviction" rather than "involvement," we see little distinction between the two terms under the circumstances.

 

the driver responded that there was no contraband in the vehicle, the officer requested, and received, consent to search the vehicle. In addition to the driver not being told he was free to leave, the continued activation of the officer's emergency lights and accusatory tenor to the officer's questioning communicated to the driver that he was not at liberty to ignore the officer's questions and drive away. *See Gutierrez,* 137 Idaho at 651, 51 P.3d at 465.

Here, the first officer acknowledged that, after Huffstutler's driver's license was returned and the friend was told she could leave, the first officer immediately approached Huffstutler and the second officer. The first officer then "kept the conversation going" by asking Huffstutler whether he had any contraband in his vehicle. Thus, as in *Gutierrez,* Huffstutler was not told he could leave after his driver's license was returned and, instead, was immediately subjected to questioning that carried an accusatory tenor. In addition, Huffstutler was not informed that the reason for the contact, the investigation of the preceding complaint by another motorist, had concluded.

The state contends that Huffstutler should have realized that he was free to leave because, unlike the situation in *Gutierrez,* the officers in this case did not activate their emergency lights. However, the officers' lights were not activated at any point during the encounter and, thus, no deactivation of lights was possible to communicate to Huffstutler that his detention had ended. We also note that once the second officer returned Huffstutler's driver's license, the second officer either spoke with Huffstutler or remained standing next to him until the first officer began his accusatory questioning. Thus, this case can be distinguished from *Martinez,* where the defendant moved freely about a gas station, the officers did not engage in accusatory questioning, and any restraint on the defendant's ability to leave stemmed from the disabled vehicle rather than the officers' conduct.

Although the officers' failure to tell Huffstutler that he was free to leave did not, standing alone, prevent the encounter from becoming consensual, that failure is a factor for our consideration. Because the officer informed the friend she was free to leave without similarly informing Huffstutler and Huffstutler was not told the investigation was concluded, that factor takes on increased significance in this case. We conclude that the totality of the circumstances in this case would not have communicated to a reasonable person that he or she was at liberty to ignore the officers' presence.

## III.

### CONCLUSION

The district court did not err by concluding that the encounter between Huffstutler and the officers did not become consensual when the second officer returned Huffstutler's driver's license to him. Accordingly, the district court's order granting Huffstutler's motion to suppress is affirmed.

Judge LANSING and Judge GUTIERREZ concur.