**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43171**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 46** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: June 30, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JAMES EDWIN WOLFE,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

James Edwin Wolfe appeals from the district court's order denying his motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer stopped Joseph Schabow, Jr. (Joseph) for following a motorhome too closely. When Joseph pulled over, the motorhome he was following also pulled over. While the officer talked with Joseph, the motorhome's driver exited the motorhome and approached the officer. In response, the officer stated: "Hey man, just wait in your car for me, alright? Appreciate it." The motorhome's driver returned to the motorhome. Joseph told the officer his father, Joseph Schabow, Sr. (Schabow), was the motorhome's driver and his cousin, Wolfe, was a passenger in his father's motorhome.

1

The officer then contacted Schabow in the motorhome. Schabow stated that he stopped because Joseph stopped. The officer asked for and obtained Schabow's driver's license. The officer stated: "Understand, I didn't stop you, but since you stopped I imagine," at which point Schabow reiterated he stopped because Joseph stopped. The officer then asked, "Do you have registration and insurance for the vehicle, if you don't mind me looking at it, sir?" Schabow could not locate the paperwork, so he asked the officer to see if Joseph knew the location of the paperwork. The officer walked back to Joseph's vehicle and asked Joseph if he knew the location of the paperwork.

While Joseph was trying to locate the paperwork, the officer walked back to his patrol vehicle and explained the situation to two other officers who had arrived at the scene. Schabow stepped out of the motorhome to tell the officer he had located the paperwork, and the officer asked Schabow to return to the motorhome. Schabow returned to the motorhome, and the officer asked the other officers to issue Joseph a ticket for following too closely and run Schabow's information. While the other officers performed those tasks, the officer ran his drug dog around both vehicles. The dog alerted on the motorhome.

The officers removed Schabow and Wolfe from the motorhome; searched the motorhome; and located marijuana, methamphetamine, and drug paraphernalia therein. One of the officers gave Wolfe *Miranda*[1] warnings and Wolfe said he understood his rights. Wolfe then stated the drugs and paraphernalia belonged to him.

The State charged Wolfe with possession of a controlled substance, Idaho Code § 37-2732(c)(1), and possession of drug paraphernalia, I.C. § 37-2734A. Wolfe moved to suppress evidence of his statements, the drugs, and the paraphernalia, arguing the officer illegally seized him without reasonable suspicion when he asked Schabow to wait in the motorhome, and any evidence obtained after that point was the fruit of an illegal seizure. The district court denied the motion to suppress. Wolfe timely appeals the denial of his motion to suppress.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

## II.

## ANALYSIS

Wolfe asserts the officer seized him without reasonable suspicion in violation of the Fourth Amendment.[2] He seeks to suppress all evidence resulting from the alleged illegal seizure. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fourth Amendment to the United States Constitution, and its counterpart, Article I, Section 17 of the Idaho Constitution, guarantee the right of every citizen to be free from unreasonable searches and seizures. However, not all encounters between the police and citizens involve the seizure of a person. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *State v. Jordan*, 122 Idaho 771, 772, 839 P.2d 38, 39 (Ct. App. 1992). The test to determine if an individual is seized for Fourth Amendment purposes is an objective one, evaluating whether under the totality of the circumstances a reasonable person would have believed he was not free to leave. *State v. Henage*, 143 Idaho 655, 658-660, 152 P.3d 16, 19-21 (2007). Only when an officer, by means of physical force or show of authority, restrains the liberty of a citizen may a court conclude that a seizure has occurred. *State v. Fry*, 122 Idaho 100, 102, 831 P.2d 942, 944 (Ct. App. 1991). A seizure does not occur simply because a police officer approaches an individual on the street or other public place, by asking if the individual is willing to answer some questions or by putting forth questions if the individual is willing to listen. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Florida v. Royer*, 460 U.S. 491, 497 (1983). Unless and until there is a detention, there is no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed. *Royer*, 460 U.S. at 498. Even when officers have no basis for suspecting a particular

---

[2]     A seizure is permissible if it is based upon specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).

individual, they may generally ask the individual questions and ask to examine identification. *Fry*, 122 Idaho at 102, 831 P.2d at 944. So long as police do not convey a message that compliance with their requests is required, the encounter is deemed consensual and no reasonable suspicion is required. *Id.*

The United States Supreme Court, in *United States v. Mendenhall*, 446 U.S. 544, 554, (1980), stated:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

Wolfe asserts a seizure occurs when an officer orders a person to wait for the officer at a particular place and the person complies with the order. Thus, Wolfe argues the officer in this case seized Wolfe when the officer asked Schabow to wait in the motorhome and Schabow complied. According to Wolfe, the officer seized Wolfe when the officer seized Schabow because Wolfe was a passenger in Schabow's vehicle. *See State v. Gutierrez*, 137 Idaho 647, 650, 51 P.3d 461, 464 (Ct. App. 2002).

The State conceded to the district court that any seizure of Schabow was also a seizure of Wolfe. Further, it is clear the officer did not have reasonable suspicion that Schabow committed, was committing, or was about to commit a crime when the officer asked Schabow to wait in the motorhome. Thus, the dispositive issue in this case is whether the officer seized Schabow when the officer asked Schabow to wait in the motorhome.[3]

The district court held that under the totality of circumstances the officer's initial encounter with Schabow was consensual. According to the court, the officer's statement to Schabow consisted of "directions about what [Schabow and Wolfe] could do at [the] scene, but not prohibitions from those individuals driving off." Thus, the court found the statement implied that Schabow and Wolfe could stay at the scene or leave; but if they remained, they should stay back and not join the conversation between the officer and Joseph.

---

[3] Wolfe also argues "[t]he taking of Mr. Schabow's driver's license was unreasonable because it came after the illegal seizure." Wolfe does not argue the taking of Schabow's driver's license alone created an illegal seizure. Thus, Wolfe's argument is premised on the occurrence of an illegal seizure when the officer asked Schabow to wait in the motorhome and is therefore superfluous. Accordingly, we will not consider this argument.

4

We agree. The officer stated: "Hey man, just wait in your car for me, alright? Appreciate it." When viewed in isolation, this statement might seem to imply that Schabow was not free to leave. However, we must examine whether *under the totality of the circumstances* a reasonable person in Schabow's position would have believed he was not free to leave. *See Henage*, 143 Idaho at 658-660, 152 P.3d at 19-21. The totality of the circumstances in this case indicates that the officer's initial encounter with Schabow was consensual. Schabow voluntarily stopped his motorhome, exited the motorhome, and approached the officer while the officer was speaking with Joseph. This behavior expressed Schabow's desire to become involved in the conversation between the officer and Joseph. For the officer's safety, the officer indicated that Schabow should not join the conversation and asked if Schabow would remain in his motorhome. The officer expressed a willingness to address Schabow's concerns by asking Schabow to wait in his motorhome until the officer completed his conversation with Joseph. Thus, the officer's statement did not imply Schabow was not free to leave. Rather, it implied that if Schabow wished to remain at the scene and discuss his concerns with the officer (as Schabow had indicated), Schabow should wait in his motorhome until the officer could come speak with Schabow. The officer's subsequent conversation with Schabow confirms this interpretation of the officer's initial statement to Schabow. The officer stated: "Understand, I didn't stop you, but since you stopped I imagine," and Schabow expressed that he was Joseph's father and he stopped because Joseph stopped, not because of any action by the officer. Thus, Schabow understood that the officer had not seized him. Additionally, the officer was the only officer at the scene when he initially made contact with Schabow and did not display his weapon, make any physical contact, or use a tone of voice indicating compliance with his requests might be compelled. Rather, the officer kept the situation light and maintained a respectful, agreeable tone throughout the encounter. Thus, we are not convinced the officer's mere choice of words converted the voluntary encounter between the officer and Schabow into a seizure. Accordingly, the district court correctly held that, under the totality of the circumstances, the officer's initial encounter with Schabow was consensual. Because the officer's initial encounter with Schabow was consensual, Wolfe is not entitled to suppression of any evidence resulting from the alleged seizure and the district court correctly denied his motion to suppress.

### III.

### CONCLUSION

The officer's initial encounter with Schabow was consensual. The district court's order denying Wolfe's motion to suppress is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.