**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51802**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: September 18, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| ELTON LOZA, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Roger B. Harris, District Judge.

Judgment of conviction for trafficking in methamphetamine and possession of fentanyl with the intent to deliver, <u>affirmed</u>.

Trilogy Law Group, PLLC; Aaron J. Tribble, Boise, for appellant. Aaron J. Tribble argued.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent. Kacey L. Jones argued.

---

GRATTON, Chief Judge

Elton Loza appeals from his judgment of conviction for trafficking in methamphetamine and possession of fentanyl with the intent to deliver. Loza claims the district court erred in denying his motion to suppress and motion for judgment of acquittal. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Deputy Lowe stopped the vehicle Loza was traveling in for speeding. The vehicle was driven by Wilson Mendivil. There was also a third individual in the vehicle, Hector Olvera. Deputy Lowe asked Mendivil to provide his driver's license, registration, and proof of insurance. Mendivil provided his Mexican passport and Mexican identification card. Olvera informed Deputy Lowe that Olvera recently purchased the vehicle but had not yet transferred the registration

1

into his name. Eventually, Loza located the vehicle's registration. The registration indicated that the vehicle was registered and owned by someone other than the three individuals in the vehicle.

Deputy Lowe explained that he intended to issue Mendivil a warning for the speeding violation. Deputy Lowe asked Mendivil to accompany him to the patrol car so he could review and verify Mendivil's information before issuing the warning citation. Mendivil joined Deputy Lowe in the front seat of the patrol car. During this time, Deputy Lowe asked Mendivil about the men's travel plans. Deputy Lowe noticed the smell of burnt marijuana emanating from Mendivil's person.

After Deputy Lowe entered Mendivil's information into his computer and ran the vehicle plates, Deputy Lowe printed out the warning citation. Deputy Lowe informed Mendivil that he still needed to verify the vehicle identification number (VIN) to ensure it matched the registration document. Deputy Lowe had Mendivil exit the patrol car. When Deputy Lowe returned to the vehicle to check the registration, Olvera informed Deputy Lowe that he had found a bill of sale for the vehicle. While discussing the bill of sale, Deputy Lowe asked Olvera and Loza about their travel plans. During this time, Deputy Lowe noticed the smell of burnt marijuana emanating from inside the vehicle. Deputy Lowe verified that the VIN matched the registration and returned to his patrol vehicle to issue the warning citation and return Mendivil's documentation.

At the patrol car, Deputy Lowe returned Mendivil's documents and issued the warning citation. Based on Deputy Lowe's observations during the stop, he decided to ask Mendivil if he would be willing to answer a few more questions; Mendivil consented. Deputy Lowe then asked Mendivil if there was anything illegal in the vehicle, which Mendivil denied. Deputy Lowe then asked Mendivil for permission to search the vehicle, which Mendivil granted. Deputy Lowe informed Mendivil that he had smelled marijuana in the vehicle and asked how much marijuana was in the vehicle. Mendivil apologized and informed Deputy Lowe there was approximately an eighth of an ounce of marijuana in the vehicle, as well as some THC vapes.

Deputy Lowe returned to the vehicle and informed Olvera and Loza that he smelled marijuana coming from the vehicle and that Mendivil had given him permission to search the vehicle. After the two men exited the vehicle, Deputy Lowe found marijuana and drug paraphernalia. Deputy Lowe then searched the trunk, where he found three duffel bags--a blue Adidas bag, a black Adidas bag, and a black Nike bag. Mendivil claimed ownership of the blue Adidas bag. Deputy Lowe opened the bag and found multiple clear plastic bags each containing

2

large amounts of a white crystal substance he believed to be methamphetamine. The black Adidas bag similarly contained large quantities of controlled substances, clothing, and mail addressed to Olvera. The black Nike bag contained large quantities of a controlled substance, a toothbrush, and clothing. Overall, Deputy Lowe found twenty plastic bags and four bundles of methamphetamine weighing a total of 24.6 pounds. Deputy Lowe also found two large fentanyl bricks, weighing 4.6 pounds. All three passengers were subsequently arrested.

Nearly three months later, Deputy Lowe searched the black Nike bag and found a "Psycho Bunny" t-shirt of the size and type that Loza was wearing when he was arrested. Officers sought and were granted a warrant of detention for Loza to obtain saliva samples to compare to the toothbrush found in the black Nike bag.

The State charged Loza with trafficking in methamphetamine or amphetamine (400 grams or more), Idaho Code § 37-2732B(a)(4)(C), and possession of a controlled substance (fentanyl) with the intent to deliver, I.C. § 37-2732(a)(1)(A). Loza filed a motion to suppress, arguing he was subjected to an illegal and warrantless stop, the stop was unlawfully extended, his arrest was illegal, and the subsequent warrant of detention was invalid because it was based on unlawfully obtained evidence. The State responded, arguing that the traffic stop was lawful based on the officer's observation of the vehicle speeding, the officer's questions did not unlawfully extend the stop, the search of the vehicle was lawful based on probable cause or the driver's consent, Loza's arrest was supported by probable cause, and the warrant was valid.

The district court denied Loza's motion to suppress. The district court concluded Deputy Lowe did not unlawfully prolong the traffic stop. Further, the district court determined that it was reasonable for Deputy Lowe to ask Mendivil to accompany him to the patrol vehicle, and that Deputy Lowe's questions about Mendivil's travel plans while completing the warning citation did not prolong the stop. The district court found the purpose of the traffic stop was not complete at the moment Deputy Lowe printed out the warning citation. Similarly, the district court found that Deputy Lowe's conversation with Olvera and Loza while verifying the VIN was related to the purpose of the traffic stop and did not unlawfully extend the stop. The district court also concluded that Deputy Lowe had developed at least reasonable suspicion of other criminal activity by that point, which justified expanding the scope of his inquiries. Finally, the district court determined Deputy Lowe had probable cause to arrest Loza and that the warrant of detention was also supported by probable cause.

The matter proceeded to trial. At the close of the State's case, Loza moved for a judgment of acquittal, arguing there was an equal protection violation based on Deputy Lowe's decision to stop the vehicle because of the vehicle's Washington license plates. The district court denied the motion. The jury found Loza guilty. Loza appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Idaho Criminal Rule 29 provides that when a guilty verdict is returned, the court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. The test applied when reviewing the district court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

4

**ANALYSIS**

Loza claims the district court erred in denying his motion to suppress by failing to properly apply controlling legal precedent in finding that the stop was not unlawfully extended on three different occasions. Further, Loza argues that the district court erred by refusing to suppress evidence obtained from his arrest on less than probable cause. Loza also argues the district court erred by refusing to suppress evidence obtained from a deficient and tainted warrant. Finally, Loza contends that the district court erred by not granting Loza's motion for judgment of acquittal based upon the unlawful surveillance of Loza's vehicle in violation of his equal protection rights.[1]

**A.      Extension of the Traffic Stop**

Loza asserts that the district court erred by refusing to suppress evidence obtained after three extensions of the traffic stop. Specifically, Loza argues the stop was extended when Deputy Lowe printed the warning ticket but did not deliver it to Mendivil. Rather, Deputy Lowe incorrectly insisted that he still needed to verify the VIN of the vehicle. Next, Loza argues the stop was impermissibly extended when Deputy Lowe returned to the vehicle to check the VIN and engaged in a conversation with Loza and Olvera. Finally, Loza argues that the third extension occurred when Deputy Lowe handed Mendivil's documents back to him, along with the warning ticket, and instead of telling Mendivil he was free to leave, engaged in further questioning, including obtaining consent to search the vehicle.

**1.      Verification of the VIN**

Loza claims the traffic stop was unlawfully extended by Deputy Lowe's verification of the VIN after he had already printed the warning ticket. Loza argues that there was no reason to verify the VIN as part of a stop for speeding and that Deputy Lowe had no information that the vehicle was stolen.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a

---

[1]      The State argues that Loza did not provide a proper record on appeal. Although certain exhibits and transcripts are not included in the record, we cannot say that they are critical to the analysis, especially given the district court's written findings on the motion to suppress.

reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Tasks related to a traffic stop include addressing the traffic violation that precipitated the stop; determining whether to issue a traffic ticket; and making inquiries incident to the traffic stop, such as checking the driver's license, inspecting the vehicle's proof of insurance and registration, and conducting a criminal record check of the driver. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). Officers may not deviate from the purpose of a traffic stop by investigating (or taking safety precautions incident to investigating) other crimes without reasonable suspicion. *See Rodriguez*, 575 U.S. at 356.

However, the justification for a motorist's detention is not permanently fixed at the moment the traffic stop is initiated. *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005). An officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Furthermore, even without reasonable suspicion, officers may engage in lines of investigation unrelated to an otherwise lawful traffic stop as long as doing so does not prolong the stop. *See Caballes*, 543 U.S. at 409 (holding that a dog sniff conducted during an otherwise lawful traffic stop does not violate the Fourth Amendment); *Hale*, 168 Idaho at 867, 489 P.3d at 454 (recognizing the officers may "conduct certain unrelated checks" during a traffic stop). A reasonable traffic stop may include requesting that the driver sit in the patrol car and asking the driver about their destination and purpose. *State v. Grantham*, 146 Idaho 490, 496, 198 P.3d 128, 134 (Ct. App. 2008).

Loza claims this Court's decision in *State v. Gutierrez*, 137 Idaho 647, 51 P.3d 461 (Ct. App. 2002) is controlling and the district court erred by failing to find that the stop was unlawfully extended after Deputy Lowe printed the warning citation. In *Gutierrez*, a police officer stopped a vehicle for speeding in which the defendants, Angel and Anthony Gutierrez, were passengers. The officer asked the driver for his driver's license and registration, which he produced. The officer returned to his patrol car to verify the documents, which revealed no issues. When the officer returned to the vehicle, he only intended to give the driver a warning for speeding. However, the officer "required" the driver to exit the vehicle before handing back the license and registration

6

and issuing the warning. As the officer handed these items to the driver, the officer asked, in an accusatory tone, whether there were alcoholic beverages, controlled substances, or weapons in the vehicle. The officer told the driver that he was asking these questions because the back seat passenger, Anthony Gutierrez, was acting very nervous. The driver denied the vehicle contained any of the items. The officer then asked the driver if he could search the vehicle, and the driver consented. The officer also asked the Gutierrezes for permission to search, and they both consented. The search revealed marijuana and drug paraphernalia in the belongings of the Gutierrezes. The Gutierrezes were cited with misdemeanor possession of marijuana and drug paraphernalia, and they moved to suppress the evidence due to the officer prolonging the stop and violating their Fourth Amendment rights. *Id*. at 649, 51 P.3d at 463.

This Court held the original purpose for the detention was to issue a warning citation for speeding. That purpose was accomplished once the warning citation was issued and the continued detention thereafter to question the driver about drugs, alcohol, and weapons could not be justified as part of the traffic stop. In so holding, we noted, first, that the officer "required" the driver to exit the vehicle <u>after</u> the citation had been printed. *Id*. at 651, 51 P.3d at 465. The Court noted that although the practice of requesting a driver to step out of the vehicle during the execution of a traffic stop is lawful,[2] under the circumstances, the driver would not believe that the traffic stop was over until being permitted to return to the vehicle. *Id*. The Court noted that in *Ohio v. Robinette*, 519 U.S. 33, 34 (1996), the United States Supreme Court declined to adopt a bright-line rule that would require officers to first say that the motorist is free to leave before a post-traffic stop consent to search could be deemed voluntary. *Id*. However, in *Gutierrez*, without allowing the driver to return to the vehicle, the officer began asking questions about alcohol, drugs, and weapons in an "accusatory tenor." *Gutierrez*, 137 Idaho at 651, 51 P.3d at 465. The Court held that the totality of the circumstances would not have led a reasonable motorist to infer that he was free to ignore the officer's questions and drive away. *Id*.

Here, the district court determined that the purpose of the traffic stop was not concluded before Deputy Lowe confirmed the VIN. The district court noted in *Gutierrez* that the officer had already issued the warning, and then asked additional questions relating to alcohol, drugs, and weapons; whereas in this case, although Deputy Lowe had printed out the warning citation, he had

---

[2] *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) and *State v. Parkinson*, 135 Idaho 357, 363, 17 P.3d 301, 307 (Ct. App. 2000).

7

not yet issued it to Mendivil. Moreover, Deputy Lowe still had not been provided with proof of insurance at the time, and the vehicle was registered to someone other than the three passengers in the vehicle. The district court also noted that determining whether the occupants of the vehicle have the right to use the vehicle and that all documentation is in proper order are legitimate activities in furtherance of any traffic stop.

The district court did not err in determining that the traffic stop was not unlawfully extended by Deputy Lowe checking the VIN. As noted, the vehicle was registered to someone other than the individuals in the vehicle, and although it did not come back as stolen on the database, it was reasonable for Deputy Lowe to verify the ownership, or the right to possess the vehicle before issuing the warning citation to Mendivil. An officer does not stray from the traffic stop's mission merely by following up on or verifying information provided from a license or registration check. *Hale*, 168 Idaho at 869, 489 P.3d at 456. If there is some reason to believe that the information provided during a license, registration, and insurance check is incomplete or inaccurate, a further inquiry to confirm that information, including whether a non-owner driver is in lawful possession of the vehicle, is not, in and of itself, unreasonable or outside the scope of the traffic stop's purpose. *Id.* Requesting a driver to provide the vehicle's registration is a normal incident of a traffic stop and verifying that the registration provided matches the vehicle is part of that process.

Contrary to Loza's claim, this case is distinguishable from *Gutierrez* because the officer in *Gutierrez* had nothing left to do to complete the purpose of the stop, whereas here, Deputy Lowe still had the legitimate function of comparing the registration to the VIN as a normal incident of the stop. Deputy Lowe's checking the VIN against the registration was a normal incident of the traffic stop, and the district court correctly determined that doing so did not unlawfully extend the duration of the stop.

### 2. Conversation with the passengers

Next, Loza asserts that Deputy Lowe unlawfully extended the stop by conversing with Olvera and Loza when he returned to the vehicle to verify the VIN. The district court held that, at the time of conversing with Olvera and Loza, the purpose of the stop had not been completed and that Deputy Lowe had not determined whether the individuals were in lawful possession of the vehicle. In addition, the district court held that the facts known to Deputy Lowe at the time

8

provided him with a reasonable basis to expand the investigation into the presence of illegal substances.

Deputy Lowe did not deviate from the purpose of the stop in asking Olvera and Loza about the men's travel plans when Deputy Lowe returned to the vehicle to check the VIN. At the time Deputy Lowe initially asked Mendivil to accompany him to the patrol car, Olvera offered to join and translate. Deputy Lowe declined Olvera's offer, as he was able to effectively communicate with Mendivil and intended to utilize a google translator if necessary. Deputy Lowe suspected Olvera was trying to keep Mendivil from being alone with Deputy Lowe so Olvera could ensure they provided consistent information. In the patrol car, Deputy Lowe asked Mendivil about the men's travel plans and Mendivil explained that they were traveling from Las Vegas to Boise to visit a cousin. As noted, when Deputy Lowe returned to check the VIN, he still did not have the proof of insurance, and the registration did not match any of the occupants. Upon returning to the vehicle to check the VIN, Olvera initiated a conversation with Deputy Lowe by stating that he had found a handwritten bill of sale for the vehicle. The bill of sale consisted of a piece of notebook paper which neither identified the purchaser nor the VIN. While discussing the bill of sale, Deputy Lowe asked Olvera about their travel plans and Olvera stated that they were traveling from California to Washington and denied that they had traveled through Las Vegas. Olvera also stated that the three men were not related, which was also inconsistent with Mendivil's statement that they were traveling to visit a cousin.

Deputy Lowe's discussion with Olvera regarding the bill of sale, the men's travel plans, and the lack of information provided were part of the normal investigation incident to the purpose of the stop. Deputy Lowe was gathering additional information about the passenger's relationship to the vehicle. This is especially true because Olvera claimed to be the vehicle's current owner, but his name did not appear on the registration. As the district court found, the discussion of travel plans related to the ownership of the vehicle and whether the men were lawfully in possession of the vehicle. Several pieces of information could have led Deputy Lowe to reasonably question whether the men had authority to operate the vehicle or if the vehicle was stolen. These include: the registration was in the name of someone other than the three passengers in the vehicle; the vehicle had Washington plates, but Mendivil's identification consisted of Mexican documents; no proof of insurance was given for the vehicle; and the belatedly produced bill of sale was handwritten on a piece of notebook paper but did not identify the purchaser of the vehicle or its

9

VIN. Although the vehicle did not show up as stolen when Deputy Lowe ran it through his database, the totality of circumstances indicate that Deputy Lowe had reason to make inquiries in order to determine not only ownership, but legal possession.

The district court also held that the facts known to Deputy Lowe at the time provided him with a reasonable basis to expand the investigation into the presence of illegal substances. It is well established that a law enforcement officer may expand the scope of the initial inquiry if, during the encounter, the officer discovers information or evidence indicating that additional criminal activity may be occurring. This is because a routine traffic stop may turn up suspicious circumstances that justify an officer asking questions unrelated to the stop. *Myers*, 118 Idaho at 613, 798 P.2d at 458. An officer's general observations, inquiries, and events following the stop often generate legitimate reasons for particularized lines of questioning and further investigation by law enforcement. *Id*. In *Myers*, this Court stated:

> We wish to make it clear that any routine traffic stop might turn up suspicious circumstances which could justify an officer asking questions unrelated to the stop. The officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer.

*Id*.

Reasonable suspicion must be based upon specific, articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. Factual findings that are supported by substantial and competent evidence are not clearly erroneous and will not be overturned on appeal. *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009); *see State v. Ish*, 166 Idaho 492, 501, 461 P.3d 774, 783 (2020). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *State v. Hess*, 166 Idaho 707, 710, 462 P.3d 1171, 1174 (2020).

By the time that Deputy Lowe returned to the vehicle to check the VIN, he had already noticed multiple food wrappers/garbage in the vehicle in what appeared to be evidence that the vehicle's occupants had been in the vehicle for a while or traveling a long distance; noticed Loza staring intently at him, which made him uncomfortable; observed a picture of Saint Jude and rosary beads often associated with drug dealers/traffickers as good luck charms; and Olvera had attempted to intervene in what Deputy Lowe believed to be an effort to keep stories straight. Additionally, in the patrol car, Deputy Lowe smelled burnt marijuana emanating from Mendivil[3] and Deputy Lowe noticed Mendivil had been uncomfortable when asked his cousin's name, exclaiming "Javier" in a loud voice. Deputy Lowe felt that Mendivil tried to distance himself from Deputy Lowe and mentioned that a two-dollar bill on the patrol car visor was considered lucky in his culture, which was also known to Deputy Lowe as a less-conspicuous good luck charm of drug traffickers.

As the district court found, based on these facts, at the point where Deputy Lowe discussed travel plans with Olvera, he had sufficient basis to extend the stop to investigate illegal substances. The odor of marijuana provides reasonable suspicion for a detention. *State v. Reeder*, 165 Idaho 85, 90, 438 P.3d 782, 787 (Ct. App. 2019) (holding that once the driver opened the door, the odor of marijuana gave the officers reasonable suspicion to detain the driver and Reeder). Based on the indicia observed by Deputy Lowe and the odor of marijuana from Mendivil, Deputy Lowe had reasonable suspicion of drug activity warranting the additional investigation and questioning.

### 3. Consensual conversation

Finally, Loza argues that the third extension occurred when Deputy Lowe handed Mendivil's documents back to him, along with the warning ticket and, instead of telling Mendivil he was free to leave, engaged in further questioning, including obtaining consent to search the vehicle. As an initial matter, as indicated above, by the time Deputy Lowe obtained consent from Mendivil to search the vehicle, Deputy Lowe possessed reasonable suspicion to conduct a drug

---

[3]     Loza argues that the smell of burnt marijuana is irrelevant and should not be considered because the vehicle and its passengers had just come from Nevada where smoking marijuana is completely legal. This argument is unpersuasive. The smell of burnt marijuana contributes to Deputy Lowe's reasonable suspicion of possession and/or use of controlled substances in Idaho, despite the legality of marijuana in the states through which the vehicle may have traveled. *State v. Schmadeka*, 136 Idaho 595, 600, 38 P.3d 633, 638 (Ct. App. 2001) (holding that the smell of burnt marijuana is sufficient to prompt a search of the passenger portion of the vehicle but alone is not enough for probable cause to search the vehicle's trunk).

investigation. Even if the purpose of the stop had been completed, the questioning after delivery of the citation was lawful.

Loza contends that the interaction had not transformed into a consensual encounter as Mendivil was not told he was free to leave. The district court found that once Deputy Lowe issued the citation to Mendivil, the purpose of the stop was complete and Mendivil was free to leave. The district court also found that Mendivil voluntarily consented to answering more questions and a subsequent search of the vehicle.

Traffic stops can evolve into a consensual encounter after the subject is free to leave. A traffic stop may evolve into a consensual encounter if the officer returns the driver's license, registration, and insurance documents and engages in any subsequent questioning without further show of authority which would convey a message that the individual is not free to leave. *State v. Martinez*, 136 Idaho 436, 441, 34 P.3d 1119, 1124 (Ct. App. 2001). The test for whether a police encounter has evolved into a consensual encounter involves the totality of the circumstances. *Gutierrez*, 137 Idaho at 464-65, 51 P.3d at 650-51.

Deputy Lowe issued the warning citation to Mendivil along with his documents. While Deputy Lowe and Mendivil were standing outside of the patrol car, Deputy Lowe asked Mendivil if he would be willing to answer a few more questions, to which Mendivil consented. Loza primarily argues that Deputy Lowe did not tell Mendivil he was free to leave. However, as noted in *Gutierrez*, the United States Supreme Court has not adopted a bright-line rule requiring officers to first say that the motorist is free to leave before a post-traffic stop consent to search could be deemed voluntary. *Id.* at 651, 51 P.3d at 465. Further, unlike the officer in *Gutierrez* who required the driver to exit the vehicle in order to deliver the citation, Deputy Lowe exhibited no show of force or authority that objectively would communicate to Mendivil he was not free to leave incident to issuance of the citation. Mendivil's consent to search was voluntary and the stop was not unlawfully extended by Deputy Lowe asking questions and obtaining consent from Mendivil after returning the documents and issuing the citation. The district court did not err in finding that the stop was not unlawfully extended or that Loza's consent to search was valid.

## B.     Arrest

Loza contends that the district court improperly concluded that Loza's arrest was supported by probable cause. For an arrest to be considered lawful, it must be based on probable cause. *Bishop*, 146 Idaho at 804, 203 P.3d at 1203. The standard for probable cause is low and requires

12

less than a preponderance of the evidence. *State v. Neal*, 155 Idaho 484, 486-87, 314 P.3d 166, 168-69 (2013). Probable cause for an arrest exists where an officer possesses information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *State v. Martinez-Gonzalez*, 152 Idaho 775, 779, 275 P.3d 1, 5 (Ct. App. 2012). Absolute certainty is not required. *State v. Tamez*, 116 Idaho 945, 946, 782 P.2d 353, 354 (Ct. App. 1989). Probable cause to arrest requires probability that a crime has been committed, not absolute certainty, and an officer is allowed to use all his senses and information from reliable sources to determine probable cause. *State v. Carr*, 123 Idaho 127, 130, 844 P.2d 1377, 1380 (Ct. App. 1992). Further, an officer is entitled to draw reasonable inferences from the available information regarding the knowledge that he has gained from his previous experience and training. *State v. Kysar*, 116 Idaho 992, 993, 783 P.2d 859, 860 (1989). Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking. *District of Columbia v. Wesby*, 583 U.S. 48 (2018).

Possession of a controlled substance may be either actual or constructive. *State v. Southwick*, 158 Idaho 173, 178, 345 P.3d 232, 237 (Ct. App. 2014); *State v. Garza*, 112 Idaho 778, 784, 735 P.2d 1089, 1095 (Ct. App. 1987). When a defendant is not in actual physical possession, the State must show that the defendant had knowledge and control of the substance to establish constructive possession. *See State v. Gomez*, 126 Idaho 700, 706, 889 P.2d 729, 735 (Ct. App. 1994). However, constructive possession cannot be inferred from the mere fact that a defendant occupied a vehicle in which drugs were seized. *See State v. Burnside*, 115 Idaho 882, 885, 771 P.2d 546, 549 (Ct. App. 1989). Indeed, where joint occupancy is involved, substantial evidence must exist establishing the guilt of each defendant, not merely the collective guilt of both; proximity alone will not suffice as proof of possession. *Garza*, 112 Idaho at 784-85, 735 P.2d at 1095-96. Circumstantial evidence, other than the mere fact of possession may be used to find the requisite knowledge and control. *State v. Groce*, 133 Idaho 144, 152, 983 P.2d 217, 225 (Ct. App. 1999).

The district court concluded that Deputy Lowe had probable cause to arrest Loza. Loza was one of three occupants in the vehicle. He was sitting in the front passenger seat and was behaving strangely during the traffic stop and seemed unusually nervous. Deputy Lowe smelled burnt marijuana from the vehicle where Olvera and Loza were located. Additionally, officers

searched the vehicle and found marijuana material and drug paraphernalia in the passenger compartment. Specifically, officers found a used THC vape in the center console area and a marijuana product in the passenger door where Loza was sitting. At oral argument, Loza contended that Deputy Lowe's stated basis for his arrest was the drugs found in the duffel bags in the trunk and so the drug items located in the passenger compartment are irrelevant. However, the facts making up a probable cause determination are viewed from an objective standpoint. *State v. Smith*, ___ Idaho ___, ___, 569 P.3d 137, 144 (2024). Probable cause for an arrest lies in the totality of the circumstances known to the officer at the time of the arrest. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). The drug items located in the passenger compartment, from an objective point of view, are sufficient to establish probable cause for Loza's arrest.

Deputy Lowe located three duffel bags in the trunk of the vehicle, each containing a significant amount of drugs. Mendivil claimed ownership of the first bag, and mail addressed to Olvera was found in the second bag. Based on the totality of the circumstances, it was reasonable for Deputy Lowe to infer that the third duffle bag belonged to Loza, the third vehicle occupant. This reasonable inference, along with the other indicia of drug-trafficker conduct Deputy Lowe gathered and the inconsistent travel explanations is sufficient to give rise to probable cause to believe Loza had engaged in the commission of a crime, specifically possession of a controlled substance.

Loza argues that Mendivil and Olvera had a specific connection to the first two duffel bags, but that he did not have the same connection to the third duffel bag. Loza argues the district court erred by considering the Psycho Bunny t-shirt found in the third bag that matched the shirt Loza was wearing at the time of the stop in determining that Deputy Lowe had probable cause to arrest Loza. Loza is correct that the district court erred in considering the Psycho Bunny t-shirt as it could not contribute to the probable cause supporting Loza's arrest since this t-shirt was located subsequent to his arrest. However, aside from the drug-related material found in the vehicle proximate to where Loza was seated, it is a reasonable inference that any or all three of the men had knowledge of, and exercised dominion and control over, the drugs found in the trunk.

In *Maryland v. Pringle*, 540 U.S. 366 (2003),[4] an officer conducted a traffic stop of a vehicle containing three occupants, including Pringle. *Id*. at 368. The officer observed a large amount of rolled-up cash in the glove box in front of Pringle. *Id*. After being issued a warning citation for speeding, the driver consented to a search of the vehicle. *Id*. Officers found five baggies of cocaine behind the backseat armrest. *Id*. at 368, 372. The men offered no information about the drugs, and officers arrested all three men. *Id*. at 368-69. Pringle argued that his arrest was based on mere proximity. The Supreme Court disagreed, noting that a passenger in a vehicle will often be engaged in a common enterprise with the driver, and have similar interests in concealing evidence of wrongdoing. *Id.* at 373. The Supreme Court held: "We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." *Id*. at 372. The Supreme Court concluded that probable cause supported Pringle's arrest as it was reasonable for the officer to infer a common enterprise among the three men, given that the cash and quantity of drugs in the vehicle indicated the likelihood of drug dealing, which the Court described as "an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Id*. at 373.

*Pringle* is controlling in this case. The facts set forth above sufficiently establish that Loza had knowledge and control of the drugs in the trunk and the district court did not err in finding that Loza, therefore, possessed the contraband. Further, the probable cause standard does not require proof of Loza's constructive possession. Rather, it requires only that the objective facts, and reasonable inferences drawn therefrom, be sufficient to demonstrate a fair probability to a reasonably prudent person that Loza had constructive possession of the drugs in the bag. *Carr*, 123 Idaho at 130, 844 P.2d at 1380. Thus, even without knowing that the third duffel bag contained

---

4      Loza argued for the first time during oral arguments that the Idaho Constitution provides more protection than the standard set forth in *Maryland v. Pringle*, 540 U.S. 366 (2003), and that *Pringle* should be disavowed. This argument is unavailing. First, this issue was not raised below. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Second, Loza provides no basis for why this Court should extend protections beyond the United States Constitution. Greater protection under the Idaho Constitution than provided under the Fourth Amendment requires a showing that the state constitution, the unique nature of the state, or Idaho precedent clearly indicates that a different analysis applies. *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 383, 299 P.3d 186, 190 (2013). Loza provided no evidence that the state constitution, the unique nature of the state, or Idaho precedent clearly indicated that a different analysis applies.

a shirt that matched the shirt Loza was wearing, or that there was a toothbrush with Loza's DNA on it, it was reasonable for Deputy Lowe to infer that the bag belonged to Loza. There were three passengers in the vehicle, traveling a long distance as evidenced by the food wrappers and other detritus in the vehicle, and there were three duffel bags. As noted by *Pringle*, this is enough to show that a common enterprise existed among the three passengers to show that the third duffel bag belonged to Loza. Therefore, probable cause supported Loza's arrest.

## C.     Warrant

As noted, approximately three months after Loza's arrest, Deputy Lowe searched the black Nike bag located in the trunk of the vehicle and found a Psycho Bunny t-shirt of the size and type that Loza was wearing when he was arrested. Officers sought and were granted a warrant of detention for Loza to obtain saliva samples to compare to the toothbrush found in the black Nike bag. Loza contends the warrant of detention obtained for his DNA swab did not contain facts sufficient to show probable cause.

Pursuant to I.C. § 19-625, an officer engaged in an investigation of a criminal offense may seek a warrant to detain an individual for the purpose of obtaining evidence of identifying physical characteristics, such as blood, saliva, or hair samples. A judge may issue such a warrant upon a showing under oath of: (a) probable cause for belief that a specifically described criminal offense which is a felony has been committed; (b) reasonable grounds exist, which may or may not amount to probable cause, to believe that the identified or particularly described individual committed the criminal offense; (c) procurement of evidence of the identifying physical characteristics from the identified or particularly described individual may contribute to the identification of the individual who committed such offense; and (d) such evidence cannot otherwise be obtained by the investigating officer. I.C. § 19-625(1).

The magistrate court's determination of probable cause is accorded great deference. *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). We have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of the affidavit should not take the form of de novo review. *Gates*, 462 U.S. at 236. As such, the reviewing court should give preference to the validity of the warrant. *United States v. Calabrese*, 825 F.2d 1342, 1349 (9th Cir. 1987); *see also State v. Chandler*, 140 Idaho 760, 763, 101 P.3d 704, 707 (Ct. App. 2004).

The district court concluded that, based upon all of the evidence, including the similarity between the Psycho Bunny t-shirt Loza was wearing when arrested and the t-shirt located in the

16

black Nike bag, a reasonable nexus between Loza and the items in the trunk existed and presented sufficient probable cause for issuance of the warrant of detention.

Loza raises two arguments: (1) the facts upon which the warrant was based are the same facts upon which his arrest was based, which, as discussed above, he contends are insufficient to give rise to probable cause; and (2) the additional fact of the Psycho Bunny t-shirt found in the black Nike duffel bag is nothing more than a coincidence, rather than a contributing piece of support for probable cause for the warrant.

Loza's arguments fail for several reasons. First, Loza has failed to support his claim with applicable argument and authority. The only authority cited by Loza is *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) for the propositions that the good faith exception is not valid in Idaho, Art. 1 § 17 of the Idaho Constitution prohibits warrants on less than probable cause, and introduction of evidence at trial from a deficient warrant is illegal. Loza does not address the magistrate's role in granting a warrant, the deference owed to the magistrate's decision on appeal, or I.C. § 19-625--the statutory basis for the warrant of detention at issue. Loza does not discuss the showing that must be made under I.C. § 19-625(1) for the warrant, nor does he identify which of the four statutory factors the State failed to satisfy. Loza's failure to adequately support his assertion of error with argument or authority is fatal to his claim. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Second, as to Loza's argument that the warrant was deficient for the same reasons that his arrest was not supported by probable cause, as we have detailed above, probable cause existed to support Loza's arrest.

Third, Loza argues that the only evidence potentially linking him to the black Nike bag was the Psycho Bunny t-shirt located in the bag. However, he argues the fact that the t-shirt is the same size and type as that worn by him at the time of his arrest does not connect him to the drugs in particular or show that he is the owner of the t-shirt in the bag.[5] As noted, the affidavit in support of the warrant of detention detailed the facts underlying the traffic stop and Loza's arrest which are sufficient to meet the probable cause standard. The matching t-shirt found in the bag provided further support to that probable cause. Loza's argument that the t-shirt is a mere coincidence and

---

[5] Loza also asserts that the warrant affidavit claimed that the t-shirt in the bag was the "identical" size as that worn by Loza but that the officers could not have known that. However, the distinction is immaterial, and the magistrate court only relied on the similarity between the two t-shirts, not that they were the exact same size.

does not support the issuance of the warrant is unpersuasive. The probable cause standard does not require the State to conclusively establish Loza's ownership of the t-shirt or the drugs in the bag. It requires that the State demonstrate objective facts from which a reasonably prudent person would find a fair probability that Loza owned the items in the bag. The warrant of detention was supported by probable cause.

Finally, we note that Loza has failed to show that the warrant was deficient under I.C. § 19-625. The facts set forth in the affidavit establish that several pounds of methamphetamine and two fentanyl bricks were found in the vehicle which is sufficient to give rise to probable cause that a felony offense had been committed as required by I.C. § 19-625(1)(A), because possession of any quantity of those drugs constitutes a felony. *See* I.C. §§ 37-2732(c)(1), 37-2732B(a)(4). The supporting affidavit detailed the underlying facts sufficient to meet the requirements for a warrant of detention under I.C. § 19-625(1). The affidavit described the facts that have been extensively detailed elsewhere in this opinion--the traffic stop, Deputy Lowe's observations throughout the stop, the three vehicle occupants and their behaviors, the smell of burnt marijuana, the marijuana material and drug paraphernalia found inside the vehicle, the three duffel bags, and the discovery of pounds of methamphetamine, and bricks of fentanyl in the bags. Additionally, the affidavit described the black Nike bag containing the Psycho Bunny t-shirt of the same size and style as the one Loza was wearing at the time of the traffic stop. The affidavit asserted that the warrant of detention was necessary to obtain a saliva sample from Loza to compare to the toothbrush found in the black Nike bag. Procuring Loza's saliva sample to test against the items could contribute to proving the ownership of the items and therefore identifying the individual(s) who unlawfully possessed the drugs in the bag. Moreover, the affidavit stated that the officers had no other means of obtaining Loza's saliva sample. Loza failed to show any deficiency in the presentation of information necessary for issuance of a warrant under I.C. § 19-625.

**D.      Motion for Judgment of Acquittal--Equal Protection**

Loza argues the district court erred when it denied his motion for judgment of acquittal. Loza argues Deputy Lowe only followed their vehicle because it had out-of-state license plates, which Loza contends amounts to an equal protection violation.

Idaho Criminal Rule 29 governs motions for judgment of acquittal. It provides, in relevant part, after the prosecution closes its evidence or after the close of all the evidence, the court on defendant's motion or on its own motion, must enter a judgment of acquittal of any offense for

18

which the evidence is insufficient to sustain a conviction. I.C.R. 29(a). The trial court may enter a judgment of acquittal pursuant to I.C.R. 29 only if the court finds the evidence insufficient to sustain a conviction of such offense or offenses. *State v. Clark*, 161 Idaho 372, 374, 386 P.3d 895, 897 (2016).

The district court denied Loza's motion for judgment of acquittal. The district court considered each element the State needed to prove to sustain a conviction and the evidence that the State had presented. The district court concluded the State presented sufficient evidence from which a jury could find Loza guilty. Accordingly, it denied Loza's motion.

Loza does not argue now, nor did he argue below, that the State failed to present sufficient evidence to support his conviction. As such, he has waived that argument on appeal. *See Zichko*, 129 Idaho at 263, 923 P.2d at 970. Rather, Loza argues that the district court erred by denying his motion for judgment of acquittal based on an equal protection violation. This argument fails for several reasons.

First, Loza fails to set forth this Court's standard of review as to the claim. Failure to cite to the applicable standard of review is fatal to the appellant's claim. *State v. Byrum*, 167 Idaho 735, 739-40, 476 P.3d 402, 406-07 (Ct. App. 2020). Second, Loza has failed to provide any legal basis to support his motion for judgment of acquittal based on an equal protection violation. Idaho Criminal Rule 29 allows for a judgment of acquittal only if the court finds the evidence insufficient to sustain a conviction of such offense or offenses. *Clark*, 161 Idaho at 374, 386 P.3d at 897. Loza has provided no authority that a judgment of acquittal may be entered on the alternative basis of an alleged equal protection violation.[6] A party waives an issue on appeal if either authority or argument is lacking. *Zichko*, 129 Idaho at 263, 923 P.2d at 970. Further, Loza cites to three cases without setting forth how they relate to or apply to an equal protection claim. Loza's failure to support his argument with any applicable legal authority is a waiver of his claim. *Id.*

Third, even if we consider Loza's claim, Loza has failed to show that an officer's consideration of an out-of-state plate even implicates the Equal Protection Clause. The case Loza cites is a District of Nebraska case, where the court recognized that even if an officer focuses on out-of-state plates, the existence of a traffic violation justifies a traffic stop without violating the driver's right to travel. *United States v. Hare*, 308 F.Supp.2d 955, 1001-02 (D. Neb. 2004). It is

---

[6]     Loza incorrectly relies on Idaho Criminal Rule 29 for his equal protection claim. Loza should have raised the issue as a motion to dismiss under I.C.R. 12 but failed to do so.

undisputed that Deputy Lowe stopped the vehicle Loza was traveling in for a traffic violation. Thus, the *Hare* case does not support Loza's claim of an equal protection violation.

Finally, even if Loza has raised a cognizable equal protection claim, that claim is belied by the facts. Loza asserts that Deputy Lowe admitted to following and surveilling the vehicle specifically because it was from out of state and without the fact that Lowe observed this to be an out-of-state vehicle, he would have given it no thought. However, that assertion is not supported by the record. Deputy Lowe testified that he noticed and followed the vehicle because of the unnatural position of the driver and passenger and their apparent attempt to conceal themselves behind the vehicle's "b-pillar" as they drove past his patrol vehicle. He testified that the out-of-state plates indicated to him only that the vehicle was making a long trip. Further, Deputy Lowe testified, and the district court found that he conducted the traffic stop because he observed the vehicle commit a traffic violation in his presence, not because it had Washington plates. Thus, the district court did not err by denying Loza's motion for judgment of acquittal.

## IV.

## CONCLUSION

Loza failed to show the district court erred in denying his motion to suppress or motion for judgment of acquittal. Accordingly, Loza's judgment of conviction is affirmed.

Judge LORELLO and Judge TRIBE **CONCUR**.